FILED
2009 Sep-08 AM 10:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **FARMLINKS, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.:  1:09-CV-679-VEH |
| | ) |
| **E K HOLDING, INC., SOUTHERN** | ) |
| **GREEN, INC., KINSEY V. ESTESS,** | ) |
| **and HARRY A. KNIGHT,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

This case involves a contract dispute (and other state law based claims)[1] relating to a January 1, 2007 Marketing Agreement (the "Agreement") entered into between Plaintiff Farmlinks, LLC ("Farmlinks") and Defendant Southern Green, Inc. ("Southern Green").  (Doc. 1 at Ex. C ¶ 1; *id.* at Ex. C at Ex. A).  Farmlinks filed its lawsuit against Southern Green as well as Defendants E K Holding, Inc. ("E K"), Kinsey V. Estess ("Estess") ("a director, the Vice President, the Secretary, and the

---

[1] The seven separate counts are:  (1) breach of contract; (2) account stated; (3) open account; (4) alter ego; (5) undercapitalization; (6) unjust enrichment; and (7) fraudulent conveyance.  (Doc. 1 at Ex. C at 4-6).

Treasurer of E K"),[2] and Harry A. Knight ("Knight") ("a director and the President of E K")[3] in the Circuit Court of Talladega County, Alabama, on March 10, 2009. (Doc. 1 at Ex. C at 1). On April 6, 2009, Defendants removed the litigation to this court on the basis of diversity jurisdiction. (Doc. 1).

Pending before the court is Plaintiff's Supplement to Motion for Leave to Conduct Limited Discovery (the "Supplement") (Doc. 13) filed on May 21, 2009. The Supplement relates to Plaintiff's previously filed Motion for Leave to Conduct Limited Discovery and to Extend Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Stay ("Motion for Leave") (Doc. 11) filed on May 15, 2009. Also pending is Defendants' Motion to Dismiss and Motion to Stay ("Motion to Dismiss") (Doc. 6) filed on May 2, 2009.

On May 18, 2009, the court entered an order that addressed the parties' briefing schedule concerning Plaintiff's Motion for Leave and Defendants' Motion to Dismiss:

> According to Plaintiff's Motion [for Leave], the Plaintiff cannot respond to [Defendant]s' Motion [to Dismiss] without conducting limited discovery. (Doc. 11, *passim*). However, Plaintiff's Motion [for Leave] is opposed and is not yet under submission.

---

[2] (Doc. 7 at Ex. 2 ¶ 2).

[3] (Doc. 7 at Ex. 1 ¶ 1).

The Court hereby **GRANTS** Plaintiff's Motion [for Leave] insofar as its requests an extension of the deadline to respond to [Defendant]s' Motion [to Dismiss].  Plaintiff's deadline to respond to [Defendant]s' Motion [to Dismiss] is hereby **EXTENDED** until the third business day after the Court rules on Plaintiff's Motion [for Leave].  Provided, however, that if the Court grants Plaintiff's Motion [for Leave], Plaintiff's deadline is extended generally and the parties are hereby **ORDERED** to confer and to file with the Court, no later than the third business day after the Court grants Plaintiff's Motion [for Leave], a proposed schedule of such discovery (describing the discovery to be taken) and of Plaintiff's deadline to respond to Defendant]s' Motion [to Dismiss] after such discovery is completed.

In all other respects, the Court **DEFERS RULING** on Plaintiff's Motion [for Leave].

(Doc. 12 at 1-2).

Having studied Farmlinks' Motion for Leave, Farmlinks' Supplement, Defendants' opposition thereto (Doc. 14), and Farmlinks' reply (Doc. 15), the Supplement and the deferred portion of the Motion for Leave are **DENIED** for the reasons explained below.

## II.   ANALYSIS

### A.   Personal Jurisdiction Generally

#### 1.   Respective Burdens and General Versus Specific Personal Jurisdiction

In *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990), the Eleventh Circuit explained the framework for evaluating personal jurisdiction challenges under Rule

12(b)(2) of the Federal Rules of Civil Procedure:

> When a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a *prima facie* case of personal jurisdiction over a nonresident defendant. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir.1988). A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. *Id.* The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Id.* Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff. *Id.*
>
> The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir.1990); *Alexander Proudfoot Co.*, 877 F.2d at 919. First, we consider the jurisdictional question under the state long-arm statute. *Cable/Home Communication Corp.*, 902 F.2d at 855; *Alexander Proudfoot Co.*, 877 F.2d at 919. If there is a basis for the assertion of personal jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*Madara*, 916 F.2d at 1514 (citations omitted).

The Eleventh Circuit has also described the respective burdens applicable to personal jurisdiction as:

> First, the plaintiff must allege sufficient facts in his complaint to initially support long-arm jurisdiction before the burden shifts to the defendant to make a *prima facie* showing of the inapplicability of the statute. If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations

in the complaint.

*Polski Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (citations omitted).

Because Alabama's long-arm provision "authorizes the assertion of personal jurisdiction to the limits of the United States Constitution," Farmlinks may carry its burden "by demonstrating that personal jurisdiction over [Defendants Estess and Smith] meets the requirements of federal due process. Due process requires that [Defendants Estess and Smith] have 'certain minimum contacts' with the forum state and, second that the exercise of jurisdiction over [them] does not offend 'traditional notions of fair play and substantial justice.'" *LaSalle Bank*, 274 F. Supp. 2d at 1297; *see also Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).

A plaintiff can establish either general or specific jurisdiction over the defendant to show personal jurisdiction exists. *See, e.g., International Shoe Co. v. Washington*, 326 U.S. 310 (1945) (detailing contours of appropriate and inappropriate exercise of personal jurisdiction); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984) (acknowledging distinction made between exercise of "specific" and "general" jurisdiction); *Ex parte Lagrone*, 839 So. 2d 620, 627 (Ala. 2002) ("A nonresident defendant may be subjected to Alabama's

*general in personam* jurisdiction if its contacts with this State, <u>although unrelated to the cause of action</u>, are 'continuous and systematic.'") (citing *Helicopteros* and other cases) (emphasis by underlining added).  To establish general jurisdiction over a defendant, a plaintiff must demonstrate that the defendant's connection with the forum state is "continuous and systematic." *LaSalle Bank*, 274 F. Supp. 2d at 1297; *see also Sherritt*, 216 F.3d at 1292.

To constitute minimum contacts for the purposes of specific jurisdiction:

> [A] defendant's contacts with the applicable forum must satisfy three criteria:  first, the contacts must be related to the plaintiff's cause of action or have given rise to it; second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws; and third, the contacts must be such that the defendant should reasonably anticipate being haled into court in the forum.

*LaSalle Bank*, 274 F. Supp. 2d at 1297; *see also Sherritt*, 216 F.3d at 1291.

### 2. Corporate Shield Doctrine and Exceptions

Defendants Estess and Knight base a significant part of their Motion to Dismiss for lack of personal jurisdiction upon Alabama's corporate shield doctrine which provides that "personal jurisdiction over an individual corporate officer [cannot] be predicated upon jurisdiction over the corporation." *J.C. Duke & Associates General Contractors, Inc. v. West*, 991 So. 2d 194, 199 (Ala. 2008) (footnote omitted) (citing

*Ex parte Puccio*, 923 So. 2d 1069 (Ala. 2005)). "Acts committed by an officer as an agent of the corporation will not subject the officer to personal jurisdiction[.]" *South Alabama Pigs, LLC v. Farmer Feeders, Inc.*, 305 F. Supp. 2d 1252, 1260 (M.D. Ala. 2004) (citing *Thames v. Gunter-Dunn*, 373 So. 2d 640, 641 (Ala. 1979)). Therefore, Defendants Estess and Knight cannot not be subject to personal jurisdiction in Alabama <u>solely</u> because of their roles as officers of E K.[4]

However, some notable exceptions exist to the corporate shield doctrine. For example, in *J.C. Duke*, after acknowledging the corporate shield doctrine, the Supreme Court of Alabama further explained:

> However, this Court held that if a corporation is the alter ego of an individual, then the court may disregard the corporate form and exercise personal jurisdiction over the individual because attributing the contacts to the individual defendant reflects the reality that although the contacts were ostensibly those of the corporation, the individual was the true actor. In his affidavit, Puccio did not address the factual allegations in the complaint addressing whether the corporation was Puccio's alter ego. Rather, Puccio stated that he was not an Alabama resident and that he did not have sufficient minimum contacts with Alabama for the trial court to exercise jurisdiction over him. "In construing the allegations in the [plaintiffs'] complaint not controverted by Puccio as true, as we are required to do for the purposes of Puccio's motion to dismiss, . . . we cannot say that the trial court erred in denying the motion." *Ex parte Puccio*, 923 So. 2d at 1076.

In the present case, Myrita argued that J.C. Duke's claims against

---

[4] E K has conceded that this court may properly exercise personal jurisdiction over it.

7

her should be dismissed because she had no contacts with the State of Alabama; she had never traveled to Alabama for any purposes related to the transaction that is the basis of the allegations of the complaint. She also stated that she is an officer of Clements-West, but that her status as a corporate officer alone is insufficient to support personal jurisdiction. <u>Myrita fails to deny J.C. Duke's allegations that the trial court had personal jurisdiction over her because Clements-West's contacts with Alabama were sufficient to give the trial court jurisdiction over it and Clements-West was the alter ego of Myrita and was controlled by Myrita</u>. <u>The allegations in the complaint were not disputed in any affidavit attached to the motion to dismiss, because Myrita did not file an affidavit</u>. Myrita has offered no evidence to counter the allegations in J.C. Duke's complaint; <u>thus, these uncontroverted allegations establish the trial court's personal jurisdiction</u>. Therefore, the trial court erred in dismissing J.C. Duke's action against Myrita for lack of personal jurisdiction. Accordingly, the judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion. We note that we make no judgment concerning the merits of J.C. Duke's claims against Myrita. Additionally, the issue of personal jurisdiction may be raised again by a defendant who appropriately persists in challenging it in his or her answer, in a motion for a summary judgment, or at the trial on the merits, where proof by substantial evidence may be necessary to prove the plaintiff's jurisdictional allegations in the complaint. *Ex parte McInnis*, 820 So. 2d 795 (Ala. 2001).

*J.C. Duke*, 991 So. 2d at 199-200.

In sum, in *J.C. Duke*, the Alabama Supreme Court held that because the individual defendant failed to contest the alter ego allegations, the trial court erred in finding, <u>at the motion to dismiss stage</u>, that it lacked personal jurisdiction over her. *See also South Alabama Pigs*, 305 F. Supp. 2d at 1260 (recognizing exception to corporate shield doctrine when "the corporate form was a sham or facade intended

only to protect the individual") (citation omitted); *id.* ("An officer who has never been in Alabama, nor conducted personal business in the state through an alter ego or through personal agents, may not be subjected to jurisdiction in Alabama.") (citing *Thames*, 373 So.2d at 643).

Alabama law additionally provides that:

> "A corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort." *Sieber v. Campbell*, 810 So.2d 641, 645 (Ala. 2001). *See also Bethel v. Thorn*, 757 So. 2d 1154, 1158 (Ala. 1999), and *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC*, 496 So. 2d 774, 775 (Ala.1986). Likewise, corporate agent status does not insulate the agent personally from his or her jurisdictional contacts with a state or from personal jurisdiction in the state. *Calder v. Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984); *Sieber, supra*; *Sudduth v. Howard*, 646 So. 2d 664, 668 (Ala. 1994); and *Duke*, 496 So. 2d at 40.

*Ex parte McInnis*, 820 So. 2d 795, 798-99 (Ala. 2001). Therefore, a corporate officer who has alleged to have personally participated in the commission of a tort may not be protected by the corporate shield doctrine. *See also South Alabama Pigs*, 305 F. Supp. 2d at 1260 ("Officers may be subject to personal jurisdiction, though, <u>if they have committed torts in Alabama, regardless of whether they acted within their corporate authority</u> at the time the tort was committed.") (emphasis added) (citing *Candy H. v. Redemption Ranch, Inc.*, 563 F. Supp. 505, 513 (M.D. Ala. 1983)).

    **3.    Jurisdictional Discovery**

9

In *Ex parte Troncalli Chrysler Plymouth Dodge, Inc.*, 876 So. 2d 459 (Ala. 2003), the Supreme Court of Alabama recited the following framework for evaluating a party's request to conduct jurisdictional discovery:

> Case contends that "Troncalli is not entitled to mandamus relief, because," he insists, "the trial court could have properly denied the motion to dismiss to allow [Case] to conduct jurisdictional discovery." Case's brief, at 22. He argues that, because the "only basis for a finding that Troncalli does not do business in Alabama is the affidavit testimony of its general manager," he is entitled to "probe" that testimony with "written discovery and depositions." *Id.* at 25-26.
>
> "'It is well established that a . . . court has the power to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction.'" *Andersen v. Sportmart, Inc.*, 179 F.R.D. 236, 241 (N.D. Ind. 1998) (quoting *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 311 (S.D. Ind. 1997)). "However, it is also well established that <u>a plaintiff does not enjoy an automatic right to discovery</u> pertaining to personal jurisdiction in every case." *Id.* "<u>[T]o be permitted jurisdictional discovery, plaintiff must at least *allege facts* that would support a *colorable* claim of jurisdiction</u>." *Schenck v. Walt Disney Co.*, 742 F. Supp. 838, 840 n. 1 (S.D.N.Y. 1990) (emphasis added). *See also Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D. Ind. 1997); *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 475 (D. Del. 1995); *Daval Steel Prods. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159, 162 (S.D.N.Y. 1989); *Rich v. KIS California, Inc.*, 121 F.R.D. 254, 259 (M.D.N.C.1988).
>
> A request for jurisdictional discovery must offer the court "more than conjecture and surmise in support of [the] jurisdictional theory." *Crist v. Republic of Turkey*, 995 F. Supp. 5, 13 (D.D.C. 1998). "<u>[The] standard is quite low, but a plaintiff's discovery request will nevertheless be denied if it is only based upon 'bare,' 'attenuated,' or 'unsupported' assertions of personal jurisdiction, or when a plaintiff's claim appears to be 'clearly frivolous.'</u>" *Andersen*, 179 F.R.D. at 242.

> Case has failed to satisfy this standard. <u>The allegations of his complaint do not "support a colorable claim of [general] jurisdiction."</u> On the contrary, the only jurisdictional allegations are that Troncalli "is a foreign corporation doing business in Cumming, Georgia"; that Alexander Dodge discovered a vehicle in possession of Troncalli in Georgia; and that Case traveled to Georgia to take possession of the vehicle. <u>A discovery request based on these allegations presents nothing but "conjecture and surmise" regarding the existence of general jurisdiction</u>, and is, therefore, due to be denied.

*Troncalli*, 876 So. 2d at 467-68 (emphasis by underlining added). Accordingly, "the trial court erred in denying Troncalli's motion to dismiss the complaint as to it" and the Supreme Court of Alabama granted the mandamus petition. *Id.*, 876 So. 2d at 468.

**B.    Application**

In their Motion to Dismiss, Defendants Estess and Knight contend that they are not subject to either specific or general personal jurisdiction in Alabama. Farmlinks' complaint alleges that personal jurisdiction exists with respect to these individuals on the basis of an unspecified number of ill-described contacts with this forum connected to the parties' contractual dispute: "On information and belief, Defendant Estess and/or Defendant Knight have made multiple trips to and/or contact with Talladega County, Alabama relating to the Agreement." (Doc. 1 at Ex. C ¶ 7).

In its Motion for Leave, Farmlinks originally sought to conduct discovery on the following areas:

> (1) the assets of E K Holding and Southern Green; (2) the bank accounts of E K Holding and Southern Green; (3) the terms and conditions of Toro's acquisition of E. K. Holding's assets on or around October 13, 2008; and (4) all locations of the consideration/remuneration paid by Toro from October 13, 2008 to the present.

(Doc. 13 at 2 n.1)

In its Supplement, Farmlinks added a fifth category: "the nature, extent and number of contacts that each of the Defendants had with the State of Alabama, regardless of whether those contacts related to the January 1, 2007 Marketing Agreement." (Doc. 13 ¶ 4). Farmlinks also indicated in its Supplement that "limited depositions of Defendants" might be necessary "depending upon the completeness of Defendants' responses to the discovery responses[.]" (*Id.* ¶ 5).

### 1. Specific Jurisdictional Discovery

Based upon the general principles governing personal jurisdiction, Farmlinks' ability to obtain limited discovery relating to the jurisdictional inquiry turns upon an assessment of not only the allegations asserted in complaint, but also the level of factual specificity utilized. As noted above, Farmlinks has made only a vague assertion about this court's ability to exercise specific personal jurisdiction over Defendants Estess and Smith due to their contacts with the forum arising out of the Agreement. *See, e.g., Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 n.3 (11th Cir. 2006) (finding vague and conclusory the following jurisdictional allegation:

"DIRECTV, STUMP, and YARMUTH have committed, and conspired to commit, acts and have acted alone and in concert to commit acts within the State of Florida . . . relevant to and giving rise to the claims herein").

As *Troncalli* illustrates, such a naked recitation without more, does not establish that Farmlinks is entitled to conduct specific jurisdictional discovery. *See also United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) ("A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint <u>sufficient facts to make out a prima facie case of jurisdiction</u>.") (emphasis added) (citations omitted). Moreover, even if this were a sufficient jurisdictional statement, application of the corporate shield doctrine would make limited discovery of forum contacts by Estess and Smith pertaining to the Agreement futile for the purpose of analyzing the issue of their personal jurisdiction in the absence of a potential exception.

Recognizing the likely application of the corporate shield doctrine to its contractually-based causes of action, Farmlinks hinges its request to conduct discovery primarily upon its alter ego claim[5] and to a lesser degree its undercapitalization and fraudulent conveyance counts. However, these allegations,

---

[5] As stated above, the Supreme Court of Alabama has recognized that an alter ego claim can be an exception to the corporate shield doctrine.

akin to the above jurisdictional paragraph, are similarly only vaguely and inadequately expressed.

More specifically, Farmlinks makes the following assertion concerning its alter ego claim:

> On information and belief, Defendants Estess and Knight have failed to observe the corporate formalities, co-mingled funds and otherwise acted as the alter ego of E K Holding and/or Southern Green such that they are jointly and severally liable for the debts of said companies.

(Doc. 1 at Ex. C ¶ 25).

Pertaining to undercapitalization, Farmlinks contends:

> On information and belief, Estess and Knight failed to properly capitalize their companies and made payments to themselves or third parties to the derogation of Farmlinks.
>
> On information and belief, Defendants Estess and Knight undercapitalized their companies, mismanaged and wasted corporate assets and funds, such that they are jointly and severally liable for the debts of E K Holding and Southern Green.

(*Id.* ¶¶ 16, 27).

Finally, relating to its fraudulent conveyance claim, Farmlinks states in pertinent part:

> On information and belief, Estess and Knight transferred money or assets from Southern Green to themselves or to E K Holding, a company they also owned, to avoid liabilities to Farmlinks.

14

>On information and belief, Defendants, debtors to Farmlinks pursuant to the Agreement, made a transfer of assets with the actual intent to hinder, delay or defraud Farmlinks.
>
>On information and belief, Defendants made a transfer of assets without receiving a reasonably equivalent value in exchange for the transfer and Defendants were engaged or were about to engage in a business or transaction for which Defendants' remaining assets were unreasonably small in relation to the business or transaction and/or intended to incur or believed that they would incur debts beyond their ability to pay as they became due.
>
>Defendants' actions were intentionally fraudulent or constructively fraudulent in light of the facts and circumstances attending the transfer.

(*Id.* ¶¶ 17, 33-35).

These conclusory allegations (*i.e.*, in the absence of any dates, amounts, specific names, or other non-boilerplate descriptive information) do not contain the requisite level of factual specificity such that Farmlinks should be allowed to engage in limited discovery in an effort to prove the existence of specific *in personam* jurisdiction. *Cf. Ex parte United Ins. Companies, Inc.*, 936 So. 2d 1049, 1055 (Ala. 2006) ("These statements address Jackson's allegations of the existence of a civil conspiracy among the petitioners with such specificity that it is clear that <u>Jackson's complaint contained more than 'bald speculation' and 'conclusory statements' that the petitioners were involved in a conspiracy</u>.") (emphasis added); *id.* ("Therefore, Jackson's reliance on her factual allegations in the complaint did adequately rebut the

petitioners' affidavits to survive the motions to dismiss <u>to the extent that she is entitled to further discovery on personal jurisdiction</u>.") (emphasis added); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (recognizing that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *Iqbal*, 129 S. Ct. at 1949 (explaining that a claim is plausible on its face "<u>when the plaintiff pleads factual content</u> that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (emphasis added).[6]

Instead, the factual bareness of Farmlinks' alter ego, undercapitalization, and fraudulent conveyance allegations[7] included in its complaint makes this case closer to that presented in *Troncalli* in which the plaintiff similarly failed to meet the colorable or plausible threshold for an entitlement to jurisdictional discovery. *See also Snow*, 450 F.3d at 1318 ("<u>Snow presents no factual allegations</u> demonstrating an agency relationship where Yarmuth was the principal and Stump was its agent, as would be required to subject Yarmuth to jurisdiction in Florida for Stump's

---

[6] The court acknowledges that *Iqbal* is a Rule 12(b)(6) versus a Rule 12(b)(2) decision. However, because Farmlinks links its right to conduct limited jurisdictional discovery on its alter ego, undercapitalization, and fraudulent conveyance allegations, an assessment of the viability of those counts consistent with the pleading requirements of Rule 8 is integral to the determination of whether Farmlinks has met the *Troncalli* discovery threshold.

[7] As opposed to the more factually defined contractually based ones.

16

actions."). Allowing Farmlinks to proceed with the discovery that it proposes to conduct would constitute an overreaching probe due to the speculative and unsupported nature of those claims (potentially falling outside the scope of the corporate shield doctrine) upon which specific jurisdiction against Defendants Estess and Smith is purportedly based.

### 2. General Jurisdictional Discovery

*A fortiori*, Farmlinks is not entitled to conduct discovery relating to this court's general jurisdiction over Defendants Estess and Knight. In particular, Farmlinks' complaint <u>does not make any reference to continuous and systematic contacts or employ other comparable language</u>, but instead asserts that personal jurisdiction exists from their contacts with Alabama relating <u>solely</u> to the Agreement. In the absence of <u>any</u> general jurisdictional allegations, much less any underpinning factual support, Farmlinks is not entitled to seek discovery "in an attempt to prove that [Defendants Estess and Knight are] subject to general jurisdiction" in Alabama. *Troncalli*, 876 So. 2d at 467; *see id.* at 468 ("The allegations of [Farmlinks'] complaint do not [even mention much less] 'support a colorable claim of [general] jurisdiction.'").

### III. CONCLUSION

Accordingly, for the foregoing reasons, Farmlinks' Supplement and the related

deferred portion of its Motion for Leave are **DENIED**.  Consistent with the court's prior briefing order, Farmlinks' response to Defendants' Motion to Dismiss is due <u>within three business days from the entry date of this order</u>.

    **DONE** and **ORDERED** this the 8th day of August, 2009.

                                              **VIRGINIA EMERSON HOPKINS**
                                              United States District Judge