IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **FARMLINKS, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.: 1:09-CV-679-VEH** |
| ) | |
| **E K HOLDING, INC., SOUTHERN** ) | |
| **GREEN, INC., KINSEY V. ESTESS,** ) | |
| **and HARRY A. KNIGHT,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

**I.   INTRODUCTION**

This case involves a contract dispute (and other state law based claims)[1] relating to a January 1, 2007 Marketing Agreement (the "Agreement") entered into between Plaintiff Farmlinks, LLC ("Farmlinks") and Defendant Southern Green, Inc. ("Southern Green"). (Doc. 1 at Ex. C ¶ 1; *id.* at Ex. C at Ex. A). Farmlinks filed its lawsuit against Southern Green as well as Defendants E K Holding, Inc. ("E K Holding"),[2] Kinsey V. Estess ("Estess") ("a director, the Vice President, the

---

[1] The seven separate counts are: (1) breach of contract; (2) account stated; (3) open account; (4) alter ego; (5) undercapitalization; (6) unjust enrichment; and (7) fraudulent conveyance. (Doc. 1 at Ex. C at 4-6).

[2] "[F]ormerly known as Southern Green, Inc." (Doc. 7 at 1).

Secretary, and the Treasurer of E K"),[3] and Harry A. Knight ("Knight") ("a director and the President of E K")[4] in the Circuit Court of Talladega County, Alabama, on March 10, 2009. (Doc. 1 at Ex. C at 1). On April 6, 2009, Defendants removed the litigation to this court on the basis of diversity jurisdiction. (Doc. 1 at 2-3).

Pending before the court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) (the "Motion to Dismiss") relating to Defendants Estess and Knight only, and Defendants' Motion to Stay Pending Arbitration ("Motion to Stay") (Doc. 6), both of which were filed on May 4, 2009. Defendants' supporting brief (Doc. 7) was also filed on May 4, 2009.

On September 11, 2009, Farmlinks filed its brief in opposition (Doc. 27), and on September 17, 2009, its evidence in opposition under seal. (Doc. 30). Defendants filed their reply (Doc. 31) on September 18, 2009. For the reasons explained below, both the Motion to Dismiss and the Motion to Stay, as modified herein, are due to be granted.

---

[3] (Doc. 7 at Ex. 2 ¶ 2).

[4] (Doc. 7 at Ex. 1 ¶ 1).

**II.   ANALYSIS**

   **A.   Motion to Dismiss**

      **1.   Personal Jurisdiction Generally**

         **a.   Respective Burdens and General Versus Specific Personal Jurisdiction**

In *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990), the Eleventh Circuit explained the framework for evaluating personal jurisdiction challenges under Rule 12(b)(2) of the Federal Rules of Civil Procedure:

> When a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a *prima facie* case of personal jurisdiction over a nonresident defendant. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir.1988). A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. *Id.* The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Id.* Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff. *Id.*
>
> The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir.1990); *Alexander Proudfoot Co.*, 877 F.2d at 919. First, we consider the jurisdictional question under the state long-arm statute. *Cable/Home Communication Corp.*, 902 F.2d at 855; *Alexander Proudfoot Co.*, 877 F.2d at 919. If there is a basis for the assertion of personal jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth

>  Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*Madara*, 916 F.2d at 1514 (citations omitted).

The Eleventh Circuit has also described the respective burdens applicable to personal jurisdiction as:

> First, the plaintiff must allege sufficient facts in his complaint to initially support long-arm jurisdiction before the burden shifts to the defendant to make a *prima facie* showing of the inapplicability of the statute. If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.

*Polski Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (citations omitted).

Because Alabama's long-arm provision "authorizes the assertion of personal jurisdiction to the limits of the United States Constitution," Farmlinks may carry its burden "by demonstrating that personal jurisdiction over [Defendants Estess and Smith] meets the requirements of federal due process. Due process requires that [Defendants Estess and Smith] have 'certain minimum contacts' with the forum state and, second that the exercise of jurisdiction over [them] does not offend 'traditional notions of fair play and substantial justice.'" *LaSalle Bank*, 274 F. Supp. 2d at 1297; *see also Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th

Cir. 2000).

A plaintiff can establish either general or specific jurisdiction over the defendant to show personal jurisdiction exists. *See, e.g., International Shoe Co. v. Washington*, 326 U.S. 310 (1945) (detailing contours of appropriate and inappropriate exercise of personal jurisdiction); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984) (acknowledging distinction made between exercise of "specific" and "general" jurisdiction); *Ex parte Lagrone*, 839 So. 2d 620, 627 (Ala. 2002) ("A nonresident defendant may be subjected to Alabama's *general in personam* jurisdiction if its contacts with this State, <u>although unrelated to the cause of action</u>, are 'continuous and systematic.'") (citing *Helicopteros* and other cases) (emphasis by underlining added). To establish general jurisdiction over a defendant, a plaintiff must demonstrate that the defendant's connection with the forum state is "continuous and systematic." *LaSalle Bank*, 274 F. Supp. 2d at 1297; *see also Sherritt*, 216 F.3d at 1292.

To constitute minimum contacts for the purposes of specific jurisdiction:

> [A] defendant's contacts with the applicable forum must satisfy three criteria: first, the contacts must be related to the plaintiff's cause of action or have given rise to it; second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws; and third, the contacts must be such that the defendant should reasonably anticipate being haled into court in the

forum.

*LaSalle Bank*, 274 F. Supp. 2d at 1297; *see also Sherritt*, 216 F.3d at 1291.

### b.     Corporate Shield Doctrine and Exceptions

Defendants Estess and Knight base a significant part of their Motion to Dismiss for lack of personal jurisdiction upon Alabama's corporate shield doctrine which provides that "personal jurisdiction over an individual corporate officer [cannot] be predicated upon jurisdiction over the corporation." *J.C. Duke & Associates General Contractors, Inc. v. West*, 991 So. 2d 194, 199 (Ala. 2008) (footnote omitted) (citing *Ex parte Puccio*, 923 So. 2d 1069 (Ala. 2005)).  "Acts committed by an officer as an agent of the corporation will not subject the officer to personal jurisdiction[.]" *South Alabama Pigs, LLC v. Farmer Feeders, Inc.*, 305 F. Supp. 2d 1252, 1260 (M.D. Ala. 2004) (citing *Thames v. Gunter-Dunn*, 373 So. 2d 640, 641 (Ala. 1979)).  Therefore, Defendants Estess and Knight cannot be subject to personal jurisdiction in Alabama solely because of their roles as officers of  E K.[5]

However, some notable exceptions exist to the corporate shield doctrine. For example, in *J.C. Duke*, after acknowledging the corporate shield doctrine, the Supreme Court of Alabama further explained:

---

[5] E K has conceded that this court may properly exercise personal jurisdiction over it.

However, this Court held that if a corporation is the alter ego of an individual, then the court may disregard the corporate form and exercise personal jurisdiction over the individual because attributing the contacts to the individual defendant reflects the reality that although the contacts were ostensibly those of the corporation, the individual was the true actor. In his affidavit, Puccio did not address the factual allegations in the complaint addressing whether the corporation was Puccio's alter ego. Rather, Puccio stated that he was not an Alabama resident and that he did not have sufficient minimum contacts with Alabama for the trial court to exercise jurisdiction over him. "In construing the allegations in the [plaintiffs'] complaint not controverted by Puccio as true, as we are required to do for the purposes of Puccio's motion to dismiss, . . . we cannot say that the trial court erred in denying the motion." *Ex parte Puccio*, 923 So. 2d at 1076.

In the present case, Myrita argued that J.C. Duke's claims against her should be dismissed because she had no contacts with the State of Alabama; she had never traveled to Alabama for any purposes related to the transaction that is the basis of the allegations of the complaint. She also stated that she is an officer of Clements-West, but that her status as a corporate officer alone is insufficient to support personal jurisdiction. <u>Myrita fails to deny J.C. Duke's allegations that the trial court had personal jurisdiction over her because Clements-West's contacts with Alabama were sufficient to give the trial court jurisdiction over it and Clements-West was the alter ego of Myrita and was controlled by Myrita</u>. <u>The allegations in the complaint were not disputed in any affidavit attached to the motion to dismiss, because Myrita did not file an affidavit</u>. Myrita has offered no evidence to counter the allegations in J.C. Duke's complaint; <u>thus, these uncontroverted allegations establish the trial court's personal jurisdiction</u>. Therefore, the trial court erred in dismissing J.C. Duke's action against Myrita for lack of personal jurisdiction. Accordingly, the judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion. We note that we make no judgment concerning the merits of J.C. Duke's claims against Myrita. Additionally, the issue of personal jurisdiction may be raised again by a defendant who appropriately persists in challenging it in his or her answer, in a motion for a summary

> judgment, or at the trial on the merits, where proof by substantial evidence may be necessary to prove the plaintiff's jurisdictional allegations in the complaint. *Ex parte McInnis*, 820 So. 2d 795 (Ala. 2001).

*J.C. Duke*, 991 So. 2d at 199-200 (emphasis added).

In sum, in *J.C. Duke*, the Alabama Supreme Court held that because the individual defendant failed to contest the alter ego allegations, the trial court erred in finding, <u>at the motion to dismiss stage</u>, that it lacked personal jurisdiction over her. *See also South Alabama Pigs*, 305 F. Supp. 2d at 1260 (recognizing exception to corporate shield doctrine when "the corporate form was a sham or facade intended only to protect the individual") (citation omitted); *id.* ("An officer who has never been in Alabama, nor conducted personal business in the state through an alter ego or through personal agents, may not be subjected to jurisdiction in Alabama.") (citing *Thames*, 373 So.2d at 643).

Alabama law additionally provides that:

> "A corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort." *Sieber v. Campbell*, 810 So.2d 641, 645 (Ala. 2001). *See also Bethel v. Thorn*, 757 So. 2d 1154, 1158 (Ala. 1999), and *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC*, 496 So. 2d 774, 775 (Ala.1986). Likewise, corporate agent status does not insulate the agent personally from his or her jurisdictional contacts with a state or from personal jurisdiction in the state. *Calder v. Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984); *Sieber, supra*; *Sudduth v. Howard*, 646 So. 2d 664, 668 (Ala. 1994); and *Duke*, 496 So. 2d at 40.

*Ex parte McInnis*, 820 So. 2d 795, 798-99 (Ala. 2001).  Therefore, a corporate officer who has alleged to have personally participated in the commission of a tort may not be protected by the corporate shield doctrine.  *See also South Alabama Pigs*, 305 F. Supp. 2d at 1260 ("Officers may be subject to personal jurisdiction, though, <u>if they have committed torts in Alabama, regardless of whether they acted within their corporate authority</u> at the time the tort was committed.") (emphasis added) (citing *Candy H. v. Redemption Ranch, Inc.*, 563 F. Supp. 505, 513 (M.D. Ala. 1983)).

### 2.     Application

In opposing the Motion to Dismiss, Farmlinks does not contend that personal jurisdiction exists over Estess and Knight due to their continuous and systematic contacts with the forum.  Instead, it relies upon the existence of specific personal jurisdiction and attempts to show that the alter ego exception to the corporate shield doctrine applies.  (*See* Doc. 27 at 4 ("It is undisputed that Defendants are subject to personal jurisdiction if they, as officers of E K Holding, treated the corporation as merely their alter ego and ignored or abused the corporate form, and the corporation had sufficient contacts with Alabama[.]") (citations omitted)).

While the court does not disagree with the substance of this statement, the evidence in the record does not substantiate that Estess and Knight treated E K

9

Holding merely as their alter ego.[6]  Instead, the evidence weighs heavily to the contrary.  Relatedly, this case involves circumstances completely unlike those presented in *J.C. Duke*, in which the officer there offered no affidavit disputing the alter ego allegations contained in the complaint.  991 So. 2d at 199.

Here, both Estess and Knight have provided sworn testimony challenging the status of E K Holding as a shell corporation.  Their affidavits indicate, for example, that:[7]

> EKH was formed nearly twenty years ago, under the name of Southern Green, to manufacture and sell deep tine aerators; EKH complies with

---

[6]  "Piercing the corporate veil is not a power that is lightly exercised." *Simmons v. Clark Equipment Credit Corp.*, 554 So.2d 398, 400 (Ala. 1989).  The factors a court may consider in determining whether piercing the corporate veil is appropriate include:

> [W]here a corporation is set up as a subterfuge, where shareholders do not observe the corporate form, where the legal requirements of corporate law are not complied with, where the corporation maintains no corporate records, where the corporation maintains no corporate bank account, where the corporation has no employees, where corporate and personal funds are intermingled and corporate funds are used for personal purposes, or where an individual drains funds from the corporation.

*Simmons*, 554 So. 2d at 401 (citations omitted). Moreover, "mere domination cannot be enough . . . . [; rather] there must be the added elements of misuse of control and harm or loss resulting from it."  *Id.* at 400 (citations omitted).

[7]  Copies of Knight's affidavit and Estess's affidavit are attached to Doc. 7 as Exhibit 1 and Exhibit 2, respectively.

corporate law; EKH is in good standing with the Louisiana Secretary of State; EKH's shareholders observe the corporate form; and EKH maintains corporate records and accounts separate and distinct from the individual defendants.

(Doc. 31 at 2 (citing Estess Aff. ¶¶ 30-37; Knight Aff. ¶¶ 19-26)).

Moreover, Farmlinks has offered no evidence to directly refute this sworn information. Instead, in an effort to indirectly establish the existence of an alter ego arrangement, Farmlinks has provided excerpts from the Asset Purchase Agreement between Toro Company and Southern Green (Doc. 30-2) and relies upon a conversation between Erle Fairly of Farmlinks and Estess on December 8, 2008, in which Estess indicated that "the company was no longer in the business of manufacturing aeration equipment, and it did not know how it would continue to make any further payments to Farmlinks under the Agreement." (Doc. 11-2 ¶ 7).

However, this evidence falls well below the level necessary to substantiate Farmlinks's speculative charges of sham corporate practices and, accordingly, a disregard of E K Holding's corporate form is inappropriate. *See Simmons*, *supra*, at 9-10 n.6 (listing factors relevant to piercing the corporate veil determination). Therefore, Farmlinks has not met its burden of showing the existence of personal jurisdiction over Estess and Knight (by way of the alter ego exception),[8] and the

---

[8] The court notes that Farmlinks indicates that "it believes that extremely limited discovery would confirm that Defendants treated the corporation as their alter

Motion to Dismiss is due to be granted.

### B.     Motion to Stay

In response to the Motion to Stay, Farmlinks <u>solely</u> states, in the complete absence of citing to any legal authority, that it "opposes Defendants' motion to stay pending arbitration because the case involves multiple claims against multiple Defendants, and this forum is an appropriate and proper forum for resolving these claims." (Doc. 27 at 7).  As Defendants correctly observe in their reply, "Farmlinks essentially ignores the motion to stay pending arbitration filed by all defendants[.]" (Doc. 31 at 4 (emphasis omitted)).

The paucity of Farmlinks's underdeveloped response to the arbitration issue all but concedes that this action should be sent to arbitration. *See, e.g., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (explaining that in context of summary judgment "the onus is upon the parties to formulate arguments"). Moreover, it appears to the court that the Motion to Stay is well-taken to the extent it seeks to compel arbitration and due to be granted pursuant to the Federal

---

ego, among other things." (Doc. 27 at 7 n.2). By separate order (Doc. 26), this court rejected Farmlinks's request to conduct limited jurisdictional discovery because of its failure to meet the requisite threshold for being entitled to such relief. Farmlinks has not sought reconsideration of that order. Moreover, Farmlinks's <u>belief</u> as to the <u>possible</u> fruits resulting from conducting limited discovery has no bearing upon whether this court may appropriately exercise *in personam* jurisdiction over Estess and Knight <u>based upon the current record before it</u>.

Arbitration Act, 9 U.S.C. § 1, *et seq.* Further, the court concludes that rather than staying this lawsuit, the case should be dismissed without prejudice to any party's right to seek leave to reopen it within 30 days of completing the arbitration proceedings.

### III. CONCLUSION

Accordingly, for the foregoing reasons, both the Motion to Dismiss and the Motion to Stay (as modified herein) are due to be granted. A separate order dismissing Estess and Knight without prejudice for lack of personal jurisdiction, compelling arbitration for the remaining parties, and dismissing this case without prejudice to any party's right to seek leave to reopen it within 30 days of concluding the arbitration proceedings will be entered.

**DONE** and **ORDERED** this the 30th day of September, 2009.

*/s/ VEHopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge